# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) CRIMINAL NO. 07-30156-WDS |
| CARLTON GILMORE, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

This matter is before the Court on the defendant's motion to suppress evidence (Doc. 20) and motion to suppress statements (Doc. 21). The government has filed responses to the motions (Docs. 24, 25) and the defendant has filed a supplement to the motion to suppress evidence (Doc. 28) to include affidavits of several eyewitnesses. The Court held an evidentiary hearing on the motion and took the matter under advisement. The parties have now filed post hearing briefs (Docs. 34, 35).

The defendant is charged by the grand jury with possession with intent to distribute crack cocaine (Count 1) and possession of a firearm in furtherance of a drug trafficking crime (Count 2). These charges stemmed from the execution of a search warrant at the defendant's residence at 766 North 81st Street, East St. Louis, Illinois, on June 24, 2006. The defendant asserts that the warrant was improperly executed because the officers did not "knock and announce" before entering the residence and did not give the defendant a copy of the warrant at the outset of the search of the premises. In addition, the defendant seeks to suppress statements he made to the officers on the scene as to the location of guns in his home because he did not receive his *Miranda* warnings before making the statement. The Court will address each motion in turn.

## BACKGROUND

The defendant introduced the testimony of the defendant himself, his wife, Denise Gilmore, his daughter, Chyna Gilmore, and Joyce Ann Harper, the defendant's mother to testify about events which occurred during the search of the defendant's residence.

The defendant testified that on the night before the June 24, 2006, search of his home, which occurred early in the morning, the defendant and his wife had been at the Casino Queen for a "recreational" evening, staying out all night and arriving home around 5:50 a.m. He indicated that he had not had a lot to drink, but had a couple of beers. Immediately upon arriving home they went into their bedroom and changed for bed. The next thing they heard was a loud noise, and then saw agents with guns pointed at them. The defendant stated affirmatively that there was no announcement by the officers before they executed the warrant.

The defendant and his wife were moved into the livingroom, placed on the couch and handcuffed. The defendant testified that he repeatedly asked for a copy of a warrant, but that it was not given to him until they were finished with the search, about an hour and a half later. The defendant's daughter was in her bedroom and was also placed on the couch and handcuffed.

The defendant testified that he was asked, without being given any warnings, if there were guns and drugs in the house. He told them where the drugs were located (in the kitchen cabinet) and where the weapons and ammunition could be found (in his dresser). The defendant stated that the guns were locked up in a box, and that he had a Firearms Owner Identification Card, which he had obtained before buying the guns.

The defendant further testified that he was not arrested for more than a year after the search, despite the fact that they found marijuana in the kitchen, cocaine in his bedroom as well as firearms and ammunition.

The defendant's wife, Denise Gilmore, testified that they had gone to the Casino Queen around 9:00 p.m. the night before the search, and had returned home early that morning. She had not had anything to drink while out because she was pregnant at the time. When they came home, she saw their daughter, Chyna, who was in her brother's room, which is at the front of the house, watching a DVD. They immediately got into bed, and were talking, not yet asleep, when she heard a loud crash, heard voices, a couple of agents came into the bedroom and threw her onto the floor and handcuffed her. She was then taken into the livingroom and put on the couch, and the agents questioned the defendant about the presence of guns and drugs. She confirmed that the defendant was not given any warnings before being questioned and repeatedly asked about the warrant, but was not given a copy until they were done with the search.

The defendant's daughter testified that she had awakened when her parents came in from the Casino Queen when she heard them at the door.[1] She stated that she was watching a movie in her brother's room, and heard a loud noise as the door crashed in. She stated that she did not hear any announcement or knock before the door was broken. The officers had guns drawn and directed her to get onto the floor. She was not handcuffed, but was also told to sit on the couch. She confirmed that her father was not given or shown the warrant until the officers were leaving.

The defendant's mother, Joyce Harper testified that she went to the defendant's home that morning after receiving a call from the defendant's wife about the ongoing search. She was escorted into the house upon her arrival and was told to sit on the couch with the others. She stated that only the defendant was handcuffed. She also stated that the defendant was not given a copy of the warrant until the officers were leaving.

---

[1] She later changed her testimony to say that she had been awake for about an hour before her parents arrived home because her six month old baby had awakened about 5:00 a.m. and she was already watching television when her parents arrived home at a little before 6:00 a.m.

3

The government presented the testimony of ATF Special Agent Jeff Eleveld, who testified that on the morning of June 24, 2006, the defendant was assisting in the execution of a search warrant for the Fairview Heights Office of ATF. He testified that it is standard procedure to knock and announce before executing a search warrant, and that this procedure was followed in this search. There is a standard pre-operation meeting where assignments are given for roles in the search. The meeting for this search warrant occurred the night before and that there were Illinois State Police task force officers and ATF agents present at the meeting. Officers were stationed at the front and back doors and given an order of approach. One officer was assigned to man the door ram, and another was given the task of knocking and announcing because this was not a no-knock warrant.[2] Special Agent Brett Boarm from MEGSI was given the duty to knock before entering the residence. S/A Eleveld testified that after Boarm knocked and announced their presence, the team took down the door of the residence. Boarm knocked and announced a couple of times before S/A Eleveld gave the team the directions to take the door by forced entry. The door was knocked down approximately 10-15 seconds after the knock and announce was given.

When they entered the house, they were yelling "police" and "search warrant" as they are trained to do. They located several adults and an infant in the initial sweep. The adults were secured, to limit their possible threat to the officers, and placed on the couch. He asked the defendant who lived there, and told him what they were searching for. The defendant was shown, but not given a copy of the warrant at the beginning of the search. He was given a copy

---

[2]The warrant, Defendant's Exhibit 1, was issued on June 23, 2006, by Magistrate Judge Donald G. Wilkerson for the property in question with the scope of the search including for drugs and weapons, inter alia. The warrant was based upon the affidavit of Special Agent Joshua G. Knapp, ATF, Defendant's Exhibit 2 based upon information received as a part of the investigation of the Byron Blake criminal organization, which included telephone intercepts and law enforcement surveillance. The affidavit indicated that S/A Knapp had information that the defendant's residence was being used to store money and other tools of the drug trade. (See, Def. Ex 2).

of the warrant after the search was completed. S/A Eleveld testified that they located narcotics, firearms, scales, ammunition, and a lot of casino player cards. A log of the evidence was made during the search.

Cocaine was located in a pair of pants in the defendant's bedroom. The defendant was asked if there were firearms, for safety reasons, which is a common practice. He testified that the search took a couple of hours to complete.

Karen Gordon, an officer with the Illinois State Police, assigned to MEGSI testified that early on the morning of June 24th the members of the warrant team assigned to the defendant's residence meet to review search team assignments. Her assignment was to do preliminary entry with Brett Boarm, who is the Deputy Director, Agent Meyer, Agent Brian Rigger and Agent Harris, all from MEGSI. She had completed pre-surveillance, and was assigned to drive to the home because she was familiar with the location. She testified that Agent Boerm stood to the side, "banged" on the door a couple of times and announced the search. She said that everyone on the "stick" of the primary entry of the house was shouting out the search so it could be heard. Approximately 20 seconds later, they began ramming the doorway. As they entered, she saw the defendant standing near the doorway of the bedroom, on the bedroom side, and they told him to get down. He did not initially comply, but rather backed up into the room. Once secured, the defendant and the others in the house were placed on the couch in the living room. She searched the defendant's bedroom, finding crack cocaine in a pair of pants along with a driver's license and casino playing card with the defendant's name on it. Another agent found two guns near the bed under the night stand.

## **DISCUSSION**

The defendant seeks to suppress evidence and statements on three primary grounds. The

first ground is that the officers executed a search warrant without properly knocking and announcing before entering the defendant's residence. In the alternative, the defendant asserts that if there was a knock and announce, it was done simultaneously with the entry into the residence. The second ground is that the officers did not, at the outset, present the defendant with a copy of the warrant. Finally, the defendant seeks suppression of his statements because he was not given his *Miranda* warnings before being questioned.

    **A.**    **Knock and Announce Warrant.**

The Supreme Court noted in *Hudson v. Mich.*, 547 U.S. 586, 589 (2006) that the "common-law principle that law enforcement officers must announce their presence and provide residents an opportunity to open the door is an ancient one." *Citing Wilson v. Ark.,* 514 U.S. 927, 931-932 (1995). Reviewing the evidence adduced at the hearing, and weighing the credibility of the witnesses the Court **FINDS** credible the testimony of S/A Eleveld and S/A Gordon that the standard procedure when executing warrants is to knock and announce and that this procedure was followed in this case. The Court **FURTHER FINDS** that the testimony of the defendant, his wife and daughter was suspect and not credible. Not only did they have motive to testify that there was no warning given before the entry into the residence, in order to protect the defendant, but they each testified that they were tired, having either been out all night, or, in the daughter's case, having been up with a small baby early that morning.

The Court notes that even if there were credible evidence that the officers did not knock and announce before entering the defendant's residence, or that the entry was done simultaneously with the entry, under the holding in *Hudson* the remedy for either violation is not suppression of evidence. *Id.* As the Seventh Circuit noted in *United States v. Harju*, 466 F.3d 602, 605 (7th Cir. 2006), discussing the holding in *Hudson*:

> In sum, the social costs of applying the exclusionary
> rule to knock-and-announce violations are
> considerable; the incentive to such violations is
> minimal to begin with, and the extant deterrences
> against them are substantial-incomparably greater
> than the factors deterring warrantless entries when
> *Mapp* [ *v. Ohio* 367 U.S. 643(1961)] was decided.
> Resort to the massive remedy of suppressing evidence
> of guilt is unjustified.

466 F.3d 605 n.2. Therefore, the Court **FINDS** that defendant's motion to suppress evidence based on any violation of the knock and announce rule is unsupported by the record and is, accordingly, **DENIED.**

### B. Presenting the Defendant With a Copy of the Warrant.

The defendant attempts to impose upon the searching officers a duty to immediately hand over a copy of the search warrant upon entry into the residence. Such a requirement does not exist in the federal rule governing the execution of warrants, nor in applicable caselaw reviewing that rule. The rule provides, in pertinent part:

> (C). *Receipt*. The officer executing the warrant must give a
> copy of the warrant and a receipt for the property taken to the
> person from whom, or from whose premises, the property was
> taken or leave a copy of the warrant and receipt at the place
> where the officer took the property.

Fed. R. Crim. P. 41(f)(1)(C). In this case, the testimony of all of the witnesses was that the officers did leave a copy of the warrant and the receipt with the defendant at the conclusion of the search. The Seventh Circuit has recognized that there is no "constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended." *United States v. Stefonek*, 179 F.3d 1030, 1034 (7th Cir. 1999). Therefore, the Court rejects defendant's contention that the evidence seized at the defendant's residence is subject to suppression because he was not presented with a copy of the warrant at the beginning of the search. The defendant's

motion to suppress on this basis is **DENIED**.

C. <u>**Suppression of Defendant's Statements**</u>

Finally, the defendant asserts that the statements he made to the officers concerning the location of the guns, the drugs and ammunition should be suppressed because he was not given his *Miranda* warning before being questioned. The Court **FINDS** that the credible testimony was that the defendant did not give any statements concerning the location of the drugs or the ammunition, but S/A Eleveld did ask the defendant about the presence of guns for safety purposes.

Under the Supreme Court holding in *Nix v. Williams,* 467 U.S. 431, 443 (1984), evidence is admissible when it would have been discovered inevitably through lawful means. The *Nix* Court held that "the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, and not a *worse,* position than they would have been in had no police error or misconduct occurred." *Id.* Clearly in this case, the guns, drugs, ammunition and drug paraphernalia would have been discovered as a result of the lawful search of the defendant's residence. Therefore, to the extent that the defendant seeks to suppress evidence based on this, his motion is **DENIED.**

The Court notes that there was no testimony from the officers that the defendant directed them to drug, drug paraphernalia and ammunition seized, and, therefore, there is no statement to suppress with respect to those items. With respect to the presence of guns, and any statement made by the defendant, S/A Eleveld did not testify as to anything specific that the defendant said with respect to the presence of guns, just that S/A Eleveld "probably" asked the defendant if there *were* any guns. S/A Eleveld did not testify that as a result of any questioning of the

defendant that he then directed a search of specific areas of the house for guns, as detailed by the defendant. The search was conducted throughout the house, and the items seized were seized as a result of the search, not as a result of any statement made by the defendant.

If the government seeks to introduce any statement made by the defendant at trial through testimony of witnesses present at the search, the Court will revisit this issue at that point. The Court, therefore, **FINDS** that there is no statement to suppress with respect to the location of items seized, or defendant's acknowledgment of those items, and therefore, the defendant's motion on this ground is **DENIED.**

## **CONCLUSION**

Accordingly, the Court **DENIES** defendant's motions to suppress evidence (Doc. 20) and statements (Doc. 21) on all grounds raised.

**IT IS SO ORDERED.**

**DATED: April 2, 2008.**

**s/ WILLIAM D. STIEHL**
**DISTRICT JUDGE**